IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS DAVID R.F.,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN, GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*,<br><br>Respondents. | Civil No. 1:26-cv-04330-MWJS<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS<br><br>A# 244-553-743 |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Carlos David R.F.[1] petitions for a writ of habeas corpus under 28 U.S.C. § 2241. He entered the United States through the San Ysidro Port of Entry on May 7, 2024. Dkt. No. 14, at pg. 2. Petitioner was deemed inadmissible at the border crossing because he lacked the necessary documents for entry, but immigration authorities issued him a Notice to Appear and paroled him into the United States. *Id*. And because an immigration officer must find that "the noncitizen presents neither a security risk nor risk of absconding" in order to parole a noncitizen into the country, that decision "reflect[ed] a determination by the government" that Petitioner was "not a

[1] For reasons previously explained in *Sergio D.L.S. v. Warden, Cal. City Correctional Ctr*., No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only Petitioner's first name and the initials of his last name are used in this order.

danger to the community or a flight risk." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1104 (E.D. Cal. 2025) (cleaned up).

Over the next several years, Petitioner obtained work authorization and a driver's license, and secured gainful employment. Dkt. No. 1, at pgs. 5-6. In June 2025, he also filed an application to adjust his status and to become a lawful permanent resident. Dkt. No. 20-2, at pg. 2. But on January 24, 2026, Petitioner had an encounter with law enforcement that led to his arrest by immigration officials. On that date, for reasons that the record does not make clear, Petitioner apparently drove into an off-limits section of Miami International Airport, damaging a gate barrier arm in the process. Local police arrested Petitioner following the incident, and he was charged with misdemeanor trespass and misdemeanor criminal mischief causing damage of more than $200 but less than $1,000 for damaging the gate arm. Dkt. No. 14-1, at pgs. 11-13. The case was terminated several weeks later pursuant to the entry of a nolle prosequi, *id.* at pg. 16, but in the interim, immigration authorities had lodged an immigration detainer against Petitioner with the county jail, Dkt. No. 20-2, at pg. 2. So when Petitioner was released from jail, he was immediately taken into custody by immigration officials. He has remained in immigration detention ever since. Petitioner now invokes this court's habeas jurisdiction, contending that his arrest and detention, without any pre-deprivation process, violated his constitutional due process rights.

Many district judges, both in this district and others, have granted petitions in circumstances similar to those present here. *See, e.g.*, *Carlos U.G. v. Warden of the Cal. City Detention Facility*, No. 1:26-cv-04427-MWJS, 2026 WL 1999947 (E.D. Cal. July 10, 2026); *Adan Fernando R.V. v. Warden of the Mesa Verde ICE Detention Facility*, No. 1:26-cv-03234-MWJS, 2026 WL 1423564 (E.D. Cal. May 20, 2026); *Juan Pablo R.F. v. Warden, Golden State Annex Detention Facility*, No. 1:26-cv-03238-MWJS, 2026 WL 1365775 (E.D. Cal. May 15, 2026). In these prior decisions, courts have held that a noncitizen previously released from immigration custody "possesse[s] a liberty interest in his continued freedom"; that the government ordinarily must provide pre-deprivation process before detaining such a noncitizen; and that if the government fails to provide the constitutionally required pre-deprivation process, the noncitizen "must be ordered immediately released because it is not possible to remedy that constitutional violation with anything less." *Carlos U.G.*, 2026 WL 1999947, at *3.

The court has considered these precedents and concluded that they reached the correct result based on the current state of Supreme Court and circuit precedent. The only question in this case, therefore, is whether there is any material distinction from those prior decisions.

Respondents offer the concession that "this case is in the category of immigration habeas cases for which the Court has typically ordered a bond hearing pursuant to due process to determine Petitioner's suitability for release from detention pending a final

order of removal." Dkt. No. 20, at pg. 1. That is so, the government submits, because Petitioner is currently in "pre-order detention and has criminal history." *Id.* Accordingly, Respondents do not oppose the court ordering a bond hearing if it concludes that Petitioner is detained pursuant to the authority of 8 U.S.C. § 1226(a). *Id.* at pg. 2.

Respondents' concession nods toward the fact that, in some circumstances, it can be "sufficient to provide [a noncitizen] with post-deprivation process," in which case the remedy of a bond hearing—rather than immediate release—can suffice. *Carlos U.G.*, 2026 WL 1999947, at *3. But while Respondents make a passing reference to Petitioner's "criminal history," Dkt. No. 20, at pg. 1, they do not suggest that that history encompasses anything other than Petitioner's arrest for damaging a gate barrier arm, which charges were ultimately dismissed without any conviction. Nor do Respondents offer any details about the underlying incident or argue that they amount to an "extraordinary situation[]" in which "there is evidence of urgent concerns or an especially strong governmental interest that suffices to justify a post-deprivation, rather than a pre-deprivation hearing." *Carlos U.G.*, 2026 WL 1999947, at *4 (cleaned up). Given that Respondents have not made any argument that post-deprivation process would suffice here, the court cannot accept that it would.

Respondents do, however, make two other arguments in an effort to distinguish this case from those in which district courts have granted immediate release. First,

although they do not distinctly argue the point, Respondents "preserve their position that Petitioner is subject to the mandatory pre-order detention statute, 8 U.S.C. § 1225(b)." *Id.* at pg. 1. Respondents acknowledge that the Ninth Circuit recently rejected that argument for a large category of immigration detainees in *Rodriguez Vazquez v. Bostock*, --- F.4th ----, 2026 WL 2196424 (9th Cir. 2026), but they submit that *Rodriguez Vazquez* does not control here, because "Petitioner was *paroled* into the United States and thus remains subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)." *Id.* (emphasis in original); *see also id.* at pg. 1 n.1. That argument is not convincing. As courts in this district and others have persuasively explained on many prior occasions, the government's previous determination to release a noncitizen on parole is not compatible with a later decision to re-detain the same noncitizen pursuant to § 1225(b)(2). *See, e.g.*, *Cornejo v. Andrews*, 823 F. Supp. 3d 1085, 1094-95 (E.D. Cal. 2026) (finding that the government's "interpretation of § 1225(b)(2) is unlawful as applied to non-citizens who have been released by [the Department of Homeland Security] on their own recognizance into the interior of the country"); *Sharan S. v. Chestnut*, No. 1:25-cv-01427, 2025 WL 3167826, at *4-9 (E.D. Cal. Nov. 12, 2025) (holding that a petitioner previously released on his own recognizance was not detained pursuant to § 1225(b)(2)(A), but that even if the government's interpretation of that provision was correct, its prior release of petitioner pursuant to § 1226(a) imbued him with a liberty interest protected by due process); *see generally Obando v. Warden of the Cal. City*

*Detention Facility*, No. 1:26-cv-04221, 2026 WL 2234492, at *2 (E.D. Cal. Aug. 3, 2026) (collecting cases rejecting the government's position that noncitizens previously detained and released by immigration authorities may be re-detained pursuant to § 1225(b)(2)). And those prior decisions dovetail with the reasoning of *Rodriguez Vazquez* itself. *See Rodriguez Vazquez*, 2026 WL 2196424, at *14 (explaining that a noncitizen present in the interior of the United States does not "remain[] in the perpetual state of seeking admission (that is, seeking *entry*)" and therefore is not subject to § 1225(b)(2)(A)). For these reasons, the court joins the prior orders in rejecting the government's argument on this point.

Respondents' second proffered distinction from prior orders granting immediate release is similarly unconvincing. They note that in this case, an immigration judge (IJ) granted a joint motion allowing Petitioner to withdraw his application for admission pursuant to 8 U.S.C. § 1225(a)(4). Dkt. No. 20, at pgs. 2-3; *see also* Dkt. No. 14-1, at pgs. 19-22 ("Joint Motion for Withdrawal of Application for Admission"), 23-26 (IJ order granting joint motion). Respondents suggest that the grant of that motion "proves that the immigration judge found" that Petitioner "is an applicant for admission"—which in the government's view triggers § 1225(b)(2)(A) and requires Petitioner's mandatory detention. But the court is not persuaded that the Immigration and Nationality Act permits the withdrawal of Petitioner's application for admission in the way the government has described; indeed, the Ninth Circuit appeared skeptical in *Rodriguez*

*Vazquez* that a noncitizen in Petitioner's position—that is, present in the interior of the country on parole—could withdraw their application pursuant to § 1225(a)(4). *See Rodriguez Vazquez*, 2026 WL 2196424, at *13 n.1 (observing that § 1225(a)(4) does not appear to be "designed to operate beyond aliens arriving at the border or a port of entry," and citing *United States v. Cisneros-Resendiz*, 656 F.3d 1015, 1020 (9th Cir. 2011), for the proposition that an IJ may only grant a request for withdrawal if the noncitizen is an "arriving alien"); *see also, e.g.*, *Jacobo-Ramirez v. Mullin,* No. 2:25-cv-02136, 2026 WL 879799, at *19 (D. Nev. Mar. 30, 2026) (explaining that § 1225(a)(4) permits noncitizens "who have not yet entered the country to withdraw an application for admission and depart immediately to avoid the entry of a removal order," but is unavailable to noncitizens who have "already entered" the country and who must instead seek the analogous discretionary relief of voluntary departure).

In any event, the government does not assert that Petitioner's withdrawal of his application for admission provides an independent basis for his detention; to the contrary, they concede that it has "no effect on the detention authority." Dkt. No. 20, at pgs. 2-3. So even if the court were to accept that Petitioner's application for admission had been validly withdrawn, it would not alter the court's conclusion that he is currently being unlawfully detained.

The court therefore concludes that there are no factual or legal issues in this case that would distinguish it from the prior orders that this court has found persuasive.

Accordingly, IT IS HEREBY ORDERED that the amended petition for writ of habeas corpus (Dkt. No. 14) is GRANTED, for the reasons stated in those prior orders. Respondents are ORDERED to immediately release Petitioner Carlos David R.F. (A# 244-553-743) from their custody. Respondents shall not impose any additional restrictions on Petitioner, unless that is determined to be necessary at a future pre-deprivation/custody hearing. Respondents are permanently ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change of circumstances necessitating Petitioner's arrest and detention, and a timely hearing. At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have their counsel present. This order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal, or in the event exigent or urgent circumstances arise that justify arresting and detaining Petitioner before pre-deprivation process can be provided.

///

///

///

///

The Clerk of Court is DIRECTED to close this case and enter judgment for Petitioner. This order resolves all pending motions.

IT IS SO ORDERED.

DATED: August 14, 2026, at Honolulu, Hawai‘i.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge